IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ZHAO YAN (#A-074-518-005),           §
                                     §
          Petitioner,                §
                                     §
v.                                   §          CIVIL ACTION NO. H-07-0313
                                     §
ROBERT MUELLER, *et al.*,            §
                                     §
          Respondents.               §

## MEMORANDUM AND ORDER

The petitioner, Zhao Yan (#A-074-518-005), also known as Tony Y. Zhao, also known as Tony Y. Chao, has filed a "Complaint for Writ of Mandamus" to compel an administrative adjudication on his pending application for citizenship through naturalization. The respondents have filed a motion to dismiss for lack of subject matter jurisdiction. (Doc. # 9). The petitioner has filed a response and a motion for summary judgment on his behalf. (Docs. # 10, # 11). The respondents have submitted a reply, to which the petitioner has tendered a response. (Docs. # 12, # 13). After reviewing all of the pleadings, and the applicable law, the Court grants the respondents' motion and dismisses this case for reasons set forth below.

## I.    BACKGROUND

The petitioner is a native and citizen of the Peoples Republic of China. The respondents are Robert S. Mueller, in his capacity as Director of the Federal Bureau of Investigation ("FBI"), as well as Secretary of the Department of Homeland Security Michael

Chertoff; United States Attorney General Alberto Gonzales; and District Director of the United States Citizenship and Immigration Services Sharon A. Hudson.

The petitioner alleges that he was admitted to the United States as a lawful permanent resident on September 3, 1995. Sometime in "late 2003," the petitioner filed an N-400 Application for Naturalization with the United States Bureau of Citizenship and Immigration Services ("CIS").[1] On July 1, 2004, the petitioner was interviewed in person by CIS Officer Ramirez. At that time, the petitioner reportedly passed the requisite written tests of English and United States history. A decision on his application for naturalization could not be made at that time, however, because the Federal Bureau of Investigation ("FBI") had not yet completed the mandatory national security background check, commonly referred to as the "FBI name check."

To date, the petitioner's FBI name check has not been completed which, in turn, has delayed the adjudication of his naturalization application by CIS. Citing the lengthy delay that has elapsed since his personal interview with Officer Ramirez on July 1, 2004, the petitioner filed the pending complaint for a writ of mandamus under 28 U.S.C. § 1367 or for relief under the Administrative Procedure Act, 5 U.S.C. § 706(1), to compel the completion of his name check and the prompt adjudication of his application for naturalization.

---

[1]     One portion of the complaint states that the petitioner filed his naturalization application in "late 2003." (Doc. # 1, at 1). Another portion of the complaint states that it was filed in "late fall of 2004." (Doc. # 1, at 2). Another memorandum filed by the petitioner states that his application was filed in the "spring of 2004." (Doc. # 11, at 2). His application is not in the record. Because the petitioner was interviewed by a CIS officer on July 1, 2004, the Court assumes that his naturalization application was filed before that time in late 2003 at the earliest.

Specifically, the petitioner seeks a court order directing the FBI to complete his name check within 120 days and directing the CIS to complete the adjudication of his naturalization application within 30 days thereafter.

The respondents have filed a motion to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Alternatively, the respondents ask the Court to remand this case to CIS under 8 U.S.C. § 1447(b),[2] pending the completion of his administrative investigation, which remains pending. The parties' contentions are addressed below, beginning with the respondents' motion to dismiss for lack of subject matter jurisdiction.[3]

## II.   SUBJECT MATTER JURISDICTION

---

[2]     The respondents have filed an alternative motion to remand this case under 8 U.S.C. § 1447(b). If CIS fails to adjudicate an application for naturalization within 120 days of an applicant's interview, the applicant may seek relief in federal court under 8 U.S.C. § 1447(b), which provides jurisdiction to either (1) adjudicate the applicant's eligibility for naturalization or (2) remand the case to immigration officials for further review. The petitioner clarifies that he does not seek an adjudication under 8 U.S.C. § 1447(b). (Doc. # 10, at 4). Because the petitioner has not invoked 8 U.S.C. § 1447(b), the respondents' alternative motion to remand is moot and will not be addressed.

[3]     Although the petitioner has filed a motion for summary judgment seeking a writ of mandamus or a court order against the respondents, the Fifth Circuit teaches that district courts should give priority to motions for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (explaining that consideration of jurisdictional issues before addressing the merits prevents a court without jurisdiction from prematurely dismissing a case with prejudice); *see also Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. Unit B 1981) (explaining that a federal district court has a "mandatory duty" to dismiss a suit rather than adjudicate the merits of a claim over which it has no subject matter jurisdiction).

3

The respondents have filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over those matters specifically designated by the United States Constitution or Congress.  *See Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006) (citations omitted).  The existence of subject matter jurisdiction may be challenged at any stage in the litigation and may be raised by the district court on its own motion.  *See Nguyen v. District Director, Bureau of Immigration*, 400 F.3d 255, 260 (5th Cir. 2005) (citations omitted); *see also B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548 (5th Cir. Unit A 1981) (stating that "where a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal court poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect").

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).  When considering whether subject matter jurisdiction exists, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."  *Id.*  As the party seeking federal court review, the plaintiff bears the burden of demonstrating that jurisdiction is proper.  *See Lara v. Trominski*, 216 F.3d 487, 491 (5th Cir. 2000) (citing *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998)).

## III.   DISCUSSION

The petitioner maintains that subject matter jurisdiction exists under the federal mandamus statute found at 28 U.S.C. § 1361, which empowers a district court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  The petitioner also seeks review under the Administrative Procedure Act, 5 U.S.C. § 706(1), which can afford relief in certain circumstances where an agency has "unlawfully withheld or unreasonably delayed" taking an action.  Before addressing the jurisdictional bases invoked by the petitioner in this instance,[4] the Court pauses briefly to outline the statutory and administrative procedures for obtaining United States citizenship through naturalization, including the FBI name check process.

### A.     United States Citizenship Through Naturalization

This case concerns delays that have occurred during the process of obtaining United States citizenship through naturalization.  Obtaining United States citizenship through naturalization is an administrative process that is heavily regulated by Congress.  Congress, pursuant to an express mandate found in Article I, § 8 of the United States Constitution, has established a set of rules governing citizenship through naturalization.  When an alien seeks to obtain the privileges and benefits of citizenship through naturalization, it is well settled that the burden is on the alien applicant to establish his eligibility in every respect.  *See*

---

[4]     The petitioner relies primarily on the federal mandamus statute and the Administrative Procedure Act, but his complaint also references the Declaratory Judgment Act.  The Declaratory Judgment Act, 28 U.S.C. §§ 2201 – 2202, is a procedural statute and not a jurisdictional one.  As such, it does not provide an independent basis for federal court review.  *See Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671-62 (1950).  The Court accordingly focuses on whether the petitioner has established jurisdiction by showing that he is entitled to a writ of mandamus or relief under the Administrative Procedure Act.

*Berenyi v. District Director, INS*, 385 U.S. 630, 637 (1967).  As such, the applicant must strictly comply with all congressionally imposed prerequisites to the acquisition of citizenship.  *See INS v. Pangilinan*, 486 U.S. 875, 884 (1988); *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).  Any doubts regarding eligibility for naturalization must be resolved in favor of the government and against the applicant.  *See Berenyi*, 385 U.S. at 637; *see also United States v. Macintosh*, 283 U.S. 605, 626 (1931) ("The Naturalization Act is to be construed 'with definite purpose to favor and support the government,' and the United States is entitled to the benefit of any doubt which remains in the mind of the court as to any essential matter of fact.").

Under the applicable provisions of the Immigration and Nationality Act (the "INA") and the governing regulations, the general requirements for obtaining citizenship through naturalization specify that "[n]o person . . . shall be naturalized" unless the applicant meets the following criteria:

(1)    immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . .;

(2)    has resided continuously within the United States from the date of the application up to the time of admission to citizenship; and

(3)    during all the periods referred to in this subsection has been and still is a person of good moral character. . . .

8 U.S.C. § 1427(a).  Subject to certain exceptions,[5] an applicant must demonstrate an understanding of the English language, including the ability to read, write, and speak words in ordinary usage. 8 U.S.C. § 1423(a)(1).  An applicant must also demonstrate a knowledge and understanding of the fundamentals of United States history, and of the principles and form of the United States government.  8 U.S.C. § 1423(a)(2).  Congress has also mandated background checks of each applicant for national security reasons.  *See* Pub. L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448, set forth in the historical and statutory notes to 8 U.S.C. § 1446.

Regulations governing naturalization establish several procedural requirements for an applicant seeking citizenship.  An applicant for citizenship through naturalization must first submit a completed Form N-400 Application for Naturalization to CIS.  *See* 8 C.F.R. § 334.2 (2006).  Once an application for naturalization is filed, CIS "shall conduct an investigation of the applicant."  8 C.F.R. § 335.1.  Once that investigation is completed, each applicant shall appear in person before a CIS officer designated to conduct "examinations" pursuant to 8 C.F.R. § 335.1.  Prior to this meeting, designated by the regulations an "initial examination," the regulations require that a criminal background check be completed by the FBI to ascertain whether the applicant does or does not have an administrative or criminal record, or that the FBI cannot definitively respond because the necessary fingerprints analysis cannot be completed on the available information.  *See* 8 C.F.R. § 335.2(b).  The

---

[5]     The English language requirements do not apply, for example, to persons who are over a certain age and have lived in the United States for a lengthy period of time subsequent to obtaining lawful permanent resident status.  8 U.S.C. § 1423(b)(2).

"examination" includes questioning by the officer about matters the applicant has included in the written submissions in addition to tests administered to the applicant on English literacy and basic knowledge of the history and government of the United States. 8 C.F.R. § 335.2(c). "A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2." 8 C.F.R. § 335.3(a).

### B.     The FBI Name Check Process

The specific delay at issue in this case concerns the completion of the petitioner's name check by the FBI, which is a prerequisite to an adjudication of his application for naturalization. As noted above, the petitioner's interview with a CIS official occurred on July 1, 2004, before his national security background check was completed. Nearly three years has passed since that interview without completion of his FBI name check. According to an affidavit from Michael A. Cannon, who has been Chief of the National Name Check Program Section for the FBI in Washington, DC, since 2005, the petitioner's name check remains pending, but its processing has been delayed because of the high volume of such requests received annually by the FBI. (Doc. # 9, Exhibit A, *Cannon Affidavit*).

Cannon's affidavit details the process involved in completing a name check of its Central Records System, which consists of "administrative, applicant, criminal, personnel, and other files complied for law enforcement purposes." *Id*. at ¶ 5. Name check investigations also include searches of general indices and an Automated Case Support system that contains three different applications. *See id*. at ¶¶ 8-9. Names are searched in

8

a multitude of combinations, switching the order of first, last, and middle names, as well as combinations with only the first and last names, first and middle names, and so on. *Id.* at 11. Names are also searched phonetically against a universal index to retrieve similar spelling variations, which is particularly important considering that many names in the FBI indices "have been transliterated from a language other than English[.]" *Id.*

Cannon explains that investigative services conducted pursuant to the FBI name check program are not limited to the immigration context. Rather, name checks are performed in response to requests by various federal agencies, congressional committees, the federal judiciary, friendly foreign police and intelligence agencies, as well as state and local criminal justice agencies. *See id* at ¶ 4. In addition to investigations performed on individuals applying for immigrant visas, "green cards," or naturalization, the FBI performs name check investigations for all prospective government employees, for persons requiring security clearance, for those attending White House functions, and for persons seeking admission to the bar. *See id.* The FBI also conducts numerous name searches in direct support of its counterintelligence, counter-terrorism, and homeland security efforts. *See id.* Prior to September 11, 2001, the FBI processed approximately 2.5 million name check requests per year. *See id.* at ¶ 16. For fiscal year 2006, the FBI processed in excess of 3.4 million name checks. *See id.*

Cannon explains that the FBI processes name check requests from CIS on a "first-in, first-out" basis unless CIS directs that a particular name check be expedited. *Id.* at ¶ 19. Cannon reports that the agency is conscious of the problem posed by delays but, for a variety

of reasons, the FBI cannot provide a specific or general time frame for completing any particular name check submitted by CIS:

> The processing of name checks, including those which are expedited, depends upon a number of factors, including where in the processing queue the name check lies; the workload of the analyst processing the name check; the volume of priority checks the analyst must process for, among others, military call-ups, medical emergencies, "age-outs," or immigration "lottery" winners; the number of "Hits," (*i.e.*, possible matches) that must be retrieved, reviewed and resolved; the number of records from various Field Offices that must be retrieved, reviewed and resolved; and, more generally, the staff and resources available to conduct the checks. While the FBI is sensitive to the impact of the delays in processing name check requests, the consequence of the FBI's mission on homeland security requires that its name check process be primarily focused on providing accurate and thorough results.

*Id.* at ¶ 20. Cannon emphasizes that "[w]hen the name check is completed, the FBI provides the results to [CIS] as quickly as possible." *Id.*   Cannon confirms, nevertheless, that the petitioner's name check request has been received, that the FBI will complete the name check in accordance with the procedures in place, and that the results will be forwarded to CIS "in due course, in accordance with the FBI's normal protocol." *Id.* at ¶ 22.

The petitioner argues that the delay in processing his name check, which delay now totals nearly three years, is patently unreasonable. Therefore, the petitioner seeks a writ of mandamus under 28 U.S.C. § 1361 to compel the FBI to complete the requisite name check and to compel immigration officials to adjudicate his pending naturalization application. Citing the lengthy delays in processing his name check and naturalization application, the petitioner also invokes the Administrative Procedure Act, 5 U.S.C. § 706(1), as a potential

statutory source for federal question jurisdiction under 28 U.S.C. § 1331.[6]  For reasons set forth below, however, the Court concludes that neither the federal mandamus statute nor the Administrative Procedure Act is sufficient to establish subject matter jurisdiction in this instance.

### C.    Mandamus

The federal mandamus statute invoked by the petitioner in this case provides that district courts shall have "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Historically, as well as under the present codification found in § 1361, the writ of mandamus has been considered a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. United States Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)); *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969) ("It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases."), *cert. denied*, 397 U.S. 941 (1970).  To obtain a writ of mandamus, a plaintiff must establish "(1) a clear right to the relief, (2) a clear duty by the respondent to do the act requested, and (3) the lack of any other adequate remedy."  *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998) (citing *In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997)).  To ensure that mandamus remains an extraordinary remedy, the petitioner

---

[6]     A federal district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

carries the burden of showing that his right to issuance of the writ is "clear and indisputable." *Miller v. French*, 530 U.S. 327, 339 (2000); *Mallard v. United States Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 309 (1989).

The petitioner cannot show that judicial review is available under the mandamus statute because he does not establish a clear right to relief. Although the petitioner's impatience with the delay in processing his application is understandable, the name check is required and must be completed by law. Importantly, this is not a case in which the petitioner's naturalization application has languished because respondents have refused to conduct the requisite name check inquiry. The evidence shows that the petitioner's name check is pending along with a high volume of other requests and will be completed in turn on a "first-in, first-out" basis, subject to priorities that are dependent on workload and national security needs. To the extent that the petitioner seeks a writ of mandamus to compel an expedited completion of his name check, the applicable statute contains no specific time period for the FBI to complete its investigation. Thus, while the respondents have a clear duty to process the petitioner's application, which includes the mandatory name check investigation, the petitioner has not established a clear right to have the application adjudicated within a particular time. *See Badier v. Gonzales*, 475 F. Supp. 2d 1294 (N.D. Ga. 2006) (finding no clear right to relief and therefore no jurisdiction under 28 U.S.C. § 1361 for delays in completing a naturalization applicant's FBI name check).

In addition, the petitioner does not establish that there is no other adequate remedy. As the evidence reflects, the petitioner's name check request has been received by the FBI

and is being processed in accordance with FBI procedures.  In other words, the petitioner is in the process of obtaining the relief sought and, while the delays may be disconcerting to the petitioner, he does not establish that the process is unavailable or that there is no other adequate remedy.  *See Chaudry v. Chertoff*, 2006 WL 2670051, *2 (D. Minn. 2006).  As another district court has noted when faced with a complaint similar to the one made by the petitioner, delays in administrative processing do not necessarily render the process inadequate or unavailable and do not warrant the extraordinary writ of mandamus.  *See Attias v. Chertoff*, 2006 WL 1738377, *2 (E.D. Mo. June 22, 2006) (commenting that courts "should not use the drastic remedy of mandamus to relieve a bureaucratic delay in the processing of an agency application"); *see also Jabr v. Chertoff*, 2006 WL 3392504, *2 (E.D. Mo. Nov. 21, 2006) (same).

Other reasons counsel against judicial review for the extraordinary relief sought.  As outlined in the Cannon affidavit, the petitioner's name check request is being handled according to standard procedures and will be completed in due course.  The evidence shows that the delay is due, not only to the volume of requests that the FBI receives, but also to the FBI's exercise of discretion in determining the timing for conducting the many name check requests that it receives and the manner in which to conduct those checks.  Implicitly, the petitioner's complaint asks this Court to review a discretionary action of the Attorney General through his agency, the FBI.  The writ of mandamus "is not available to review discretionary acts of officials."  *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) (citing *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir. 1984)).  For this reason, courts have

13

held that the pace at which immigration applications are processed is not subject to judicial review under the federal mandamus statute or the Administrative Procedure Act. *See Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1355-56 (S.D. Fla. 2007); *Safadi v. Howard*, 466 F. Supp. 2d 696, 701 (E.D. Va. 2006); *see also Mustafa v. Pasquerell*, 2006 WL 488399, *5 (W.D. Tex. Jan. 10, 2006) (dismissing a complaint about delayed FBI name checks for lack of subject matter jurisdiction under the federal mandamus statute or the Administrative Procedure Act).

The petitioner insists that the duty to adjudicate a naturalization application is not discretionary, pointing to 8 U.S.C. § 1446, which instructs immigration officials to adjudicate naturalization applications within 120 days. (Doc. # 13, at 2-3). Significantly, this is not a case in which CIS has refused to adjudicate an application.[7] The focus of this case, moreover, is not delay by CIS, which appears to have processed the petitioner's application in a timely manner and is simply waiting on the results of the FBI's mandatory name check investigation. The precise issue presented in this case is the pace of the petitioner's name check investigation, which has been delayed by the huge volume of name check requests received annually by the FBI and the demands upon that agency for background investigations from diverse sources that are based on other priorities, including

---

[7]     The Court takes no position on whether the petitioner could pursue relief under 8 U.S.C. § 1447(b), which affords jurisdiction over naturalization applications in the event of delays by CIS in excess of the 120-day limit found in § 1446. In such cases, however, federal court jurisdiction is limited by the plain terms of the statute, which conveys only the authority to determine whether the applicant is entitled to naturalization or to remand the matter to CIS for such a determination. 8 U.S.C. § 1447(b). The petitioner has expressly declined to take this route and does not rely on 8 U.S.C. § 1447(b) as a basis for jurisdiction. (Doc. # 10, at 4).

14

the FBI's duty to perform criminal investigations and other security clearances.  Congress simply has not imposed a deadline for the FBI to complete the mandatory name check investigations that are required for the adjustment of immigration status and naturalization.

The petitioner argues that the FBI's workload and its responsibilities to conduct security background checks for agencies and officials other than CIS are unjustified "excuses" that are "irrelevant" to the legal issues present in this case.  (Doc. # 13, at 4).  This Court disagrees, as have others.  Notwithstanding the substantial hardship posed to the petitioner as he awaits the completion of his citizenship adjudication, the agencies charged with processing and investigating applications by these applicants must carefully and thoroughly investigate to ensure that they are not granted improvidently.  As another district court has commented, "[o]ur national security requires that caution and thoroughness in these matters not be sacrificed for the sake of expediency."  *Safadi*, 466 F. Supp. 2d at 701; *see also Mustafa*, 2006 WL 488399, *5 (noting that CIS does not have authority to expedite the FBI's investigation or to give petitioner priority over other background checks requested by other agencies and that "delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world") (quoting *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656 (N.D. Tex. 2005)).  The cases cited by the petitioner do not persuade otherwise.  *See Fu v. Reno*, 2000 WL 1644490 (N.D. Tex. Nov. 1, 2000) (citing *Hu v. Reno*, 2000 WL 425174 (N.D. Tex. Apr. 18, 2000); *Elmalky v. Upchurch*, No. 3:06-CV-2359 (N.D. Tex. March 28, 2007) (citing *Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999)).

In addition to the other reasons recited above, the respondents present compelling equitable reasons that militate against granting the petitioner's request for judicial review. The Court is persuaded that granting review of the petitioner's claims would only serve to further divert agency attention and stretch scarce resources away from the adjudication of naturalization applications by encouraging other applicants to file suit to receive expedited treatment rather than wait their turn in line. *See Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 809 (E.D. Va. 2007) (declining to grant relief in a case involving a delayed name check to avoid providing "an incentive for naturalization applicants to file civil actions in an effort to . . . 'jump to the front of the line'"); *Qui v. Chertoff*, — F. Supp. 2d —, 2007 WL 1430207, *6 (D.N.J. 2007) (declining to grant review where doing so "would do nothing more than shuffle to the front of the line those . . . applicants canny enough to file a complaint in federal court"). The Court takes judicial notice of an increasing number of cases in the Southern District of Texas which make claims concerning the delays experienced in the FBI name check process under one theory or another.[8] Other courts have also commented on the increasing number of these cases in the federal courts. *See, e.g., Liu v. Chertoff*, 2007 WL 1300127, *5 (S.D. Cal. April 30, 2007) (observing that "[t]he federal courts have recently become inundated with naturalization actions seeking declaratory relief" from delayed FBI name checks).

---

[8]     An informal survey of complaints filed recently in the Southern District of Texas, Houston Division, reveals that immigration and naturalization applicants have filed in excess of 40 civil and miscellaneous actions seeking mandamus relief against FBI Director Robert Mueller. Each one of these actions complains about delayed FBI name checks.

There is no dispute that the length of delay in this case is substantial and the Court sympathizes with the petitioner's frustration.   The Court is mindful, however, that "judicial deference to the Executive Branch is especially appropriate in the immigration context." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).   The respondents have presented sufficient evidence to demonstrate that the delay in this case is the result of a high volume of requests in combination with heightened national security concerns and not agency inaction.   As long as the FBI and CIS continue to make reasonable efforts to complete the adjudication, the pace required to complete that process is committed to the agency's discretion and is not amenable to review under 28 U.S.C. § 1361 for a writ of mandamus.  *See Grinberg*, 478 F. Supp. 2d at 1355-56; *Safadi*, 466 F. Supp. 2d at 701; *Liu*, 2007 WL 1300127, *5 (citations omitted); *Mustafa*, 2006 WL 488399, *5.   There is an important sovereign interest in ensuring that the name check process be primarily focused on providing accurate and thorough results.   The Court therefore concludes that the petitioner has not met the jurisdictional prerequisites for a writ of mandamus and he has not established that judicial review is otherwise appropriate under 28 U.S.C. § 1361.

### D.    Administrative Procedure Act — Unreasonable Delay

The petitioner also cites the Administrative Procedure Act the ("APA"), 5 U.S.C. § 706(1), as a basis for federal subject matter jurisdiction.   Like the mandamus statute, this portion of the APA can provide jurisdiction "to compel agency action" that is "unreasonably delayed or withheld." 5 U.S.C. § 706(1).   As the Supreme Court has clarified, agency delays or "failures to act are sometimes remediable under the APA, but not always." *Norton v.*

*Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004).  For a federal district court to take action pursuant to 5 U.S.C. § 706(1), a petitioner must demonstrate that an administrative agency "has failed to take a *discrete* action that it was *required to take*." *Norton*, 542 U.S. at 63 (emphasis in original).

Because both statutes offer similar means of compelling an agency to take action which by law it is required to take, claims made under this provision of the APA and the federal mandamus statute are subject to the same standard.  *See Hernandez-Avalos v. INS*, 50 F.3d 842, 844-45 (10th Cir.) (citing *Giddings v. Chandler*, 979 F.2d 1104, 1108, 1110 (5th Cir. 1992)), *cert. denied*, 516 U.S. 826 (1995).  Thus, the APA also fails to qualify as a basis for subject matter jurisdiction for the same reasons articulated above in connection with the Court's treatment of his claim for review under the federal mandamus statute.  *See Grindberg*, 478 F. Supp. 2d at 1354-55 (noting that when a plaintiff seeks to use mandamus jurisdiction to compel action, mandamus jurisdiction is coextensive with the remedies available under the APA and subject to the same principles and standards for determining subject matter jurisdiction).

In addition to the reasons set forth above, the petitioner does not demonstrate that judicial review is available under the APA because he has not shown unreasonable delay under the circumstances.  Although there is no dispute that the petitioner's application has been pending for at least three years and that this is a lengthy delay, the record does not clearly demonstrate unreasonableness on the part of the respondents.  The passage of time, standing alone, is not evidence of unreasonable delay where immigration applications are

concerned.  As the Supreme Court has found in another immigration context, "[b]oth the number of the applications received . . . and the need to investigate their validity may make it difficult for the agency to process an application as promptly as may be desirable."  *INS v. Miranda*, 459 U.S. 14, 18 (1982) (per curiam) (concerning delays in adjudicating an application to adjust status).

The pleadings and the evidence in this case do not reflect that CIS or the FBI have intentionally withheld or delayed action on the petitioner's application.   Under these circumstances, delays in processing immigration applications are not sufficient to warrant judicial review under the APA.  As one court has noted, "[t]he fact that a delay has been lengthy does not necessarily mean that action has been unlawfully withheld or unreasonably delayed" for purposes of the APA.  *Jabr v. Chertoff*, 2006 WL 3392504, *2 (E.D. Mo. Nov. 21, 2006).   In the absence of "suspicious motives or unscrupulous actions" by the respondents, the length of delay is not sufficient to confer jurisdiction pursuant to the APA. *Patel v. Chertoff*, 2007 WL 1223553, *3 (E.D. Mo. 2007) (finding that a delay of four-and-a-half years was not unreasonable); *see also Attias v. Chertoff*, 2006 WL 1738377, *2 (E.D. Mo. June 22, 2006) (finding that a delay of three years was not unreasonable in the absence of other circumstances that would show that CIS has unlawfully withheld or unreasonably delayed action).   Accordingly, the Court concludes that the petitioner has failed to establish jurisdiction over this matter under 5 U.S.C. § 706(1).[9]

---

[9]       It is worth noting that the petitioner's frustration over the pace of the processing of his naturalization application is "better addressed to the political branches." *Safadi*, 466 F. Supp.

(continued...)

## IV.  CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.      The respondents' motion to dismiss for lack of subject matter (Doc. # 9) is **GRANTED**; the respondents' alternative motion to remand is **DENIED** as **MOOT**.

2.      The petitioner's motion for summary judgment (Doc. # 11) is **DENIED** as **MOOT**.

---

[9](...continued)

2d at 701 n.7.  The facts outlined by the petitioner do not serve to distinguish his application or his name check from any other applicant who waits in line for his turn.  Likewise, the petitioner does not attribute the delay in his case to any improper motive on the FBI's part.  Thus, the source of the delay is the name check program and the volume of requests received by the FBI.  The Supreme Court has commented that "wholesale improvement" of a program cannot be accomplished by court decree, as opposed to offices of the agency or department or the "halls of Congress, where programmatic improvements are normally made."  *Norton*, 542 U.S. at 64.  As this Court has suggested previously in other recent cases dealing with delayed name check issues, it may be that additional funding by Congress or other adjustments to the criminal background screening process is necessary.  *See Nguyen v. Gonzalez*, Misc. No. H-07-0048 (S.D. Tex. March 6, 2007) (*Memorandum and Order* at 8 n.3); *Khan v. Federal Bureau of Investigation*, Misc. No. H-07-0073 (S.D. Tex. March 6, 2007) (*Memorandum and Order* at 8 n.4).  Because the delays appear to affect applicants for all manner of adjustments to their immigration status, including those requesting naturalization, the remedy for the delays associated with these proceedings should come from Congress, which has express constitutional authority to regulate in the area of naturalization, *see* U.S. Const. art. I, § 8 cl. 4 (enumerating Congress' power to establish a uniform rule of naturalization (*i.e.*, citizenship)), and its potent implied power over immigration.  *See, e.g.*, *United States v. Valenzuela-Bernal*, 458 U.S. 858,  864 (1982) ("The power to regulate immigration — an attribute of sovereignty essential to the preservation of any nation — has been entrusted by the Constitution to the political branches of the Federal Government."); *Carlson v. Landon*, 342 U.S. 524, 534 (1952) ("So long, however, as aliens fail to obtain and maintain citizenship by naturalization, they remain subject to the plenary power of Congress to expel them under the sovereign right to determine what noncitizens shall be permitted to remain within our borders.") (citations omitted); *Bright v. Parra*, 919 F.2d 31, 34 (5th Cir. 1990) (Because questions concerning immigration policy are "entrusted exclusively to the political branches of our Government, . . . we have no judicial authority to substitute our political judgment for that of the Congress") (quoting *Fiallo v. Bell*, 430 U.S. 787, 798 (1977)).

3.     This case is **DISMISSED** without prejudice for lack of subject matter jurisdiction.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on <u>May 24</u>, 2007.

Nancy F. Atlas
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ZHAO YAN (#A-074-518-005),            §
                                      §
          Petitioner,                 §
                                      §
v.                                    §        CIVIL ACTION NO. H-07-0313
                                      §
ROBERT MUELLER, *et al.*,             §
                                      §
          Respondents.                §

## FINAL JUDGMENT

For the reasons set forth in the Court's *Memorandum and Order* of even date, this

case is **DISMISSED** without prejudice for lack of subject matter jurisdiction.

This is a **FINAL JUDGMENT**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____, 2007.


                              _____
                              NANCY F. ATLAS
                              UNITED STATES DISTRICT JUDGE